UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HERLINDA C.,                           )          No. CV 19-2730 AGR
                                       )
                Plaintiff,             )
                                       )
        v.                             )          MEMORANDUM OPINION AND ORDER
                                       )
ANDREW SAUL,                           )
Commissioner of Social Security,       )
                                       )
                Defendant.             )
                                       )

Plaintiff[1] filed this action on April 10, 2019.  The parties filed a Joint Stipulation that addressed the disputed issues.  The court has taken the matter under submission without oral argument.[2]

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

---

[1]  Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 9, 10.)

I.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on December 29, 2015, and alleged an onset date of March 11, 2015.  Administrative Record ("AR") 16. The application was denied initially and on reconsideration.  AR 16, 78.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On January 24, 2018, the ALJ conducted a hearing at which Plaintiff and a vocational expert ("VE") testified. AR 31-66.  On March 7, 2018, the ALJ issued a decision denying benefits.  AR 13-25. On February 7, 2019, the Appeals Council denied review.  AR 1-7.  This action followed.

II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

III.

## DISCUSSION

### A.   Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

### B.   The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through June 30, 2018.  AR 18.  Following the five-step sequential analysis applicable to disability determinations, *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, fibromyalgia, and obesity.  AR 18.

The ALJ found that Plaintiff had the residual functional capacity to perform less than the full range of sedentary work.  Plaintiff can lift/carry 10 pounds occasionally and less than 10 pounds frequently.  She can stand/walk a total of six hours in an eight-hour workday and sit six hours in an eight-hour workday, with normal breaks.  Plaintiff can occasionally climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds.  Plaintiff can occasionally balance, stoop, kneel, crouch, and crawl.  AR 21-22.

---

[3]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsbury*, 468 F.3d at 1114.

The ALJ found that Plaintiff could perform her past relevant work as an administrative assistant.  AR 24.

### C.    Onset Date

"The onset date of a disability can be critical to an individual's application for disability benefits.  A claimant can qualify for SSDI only if her disability begins by her date last insured, and these benefits can be paid for up to 12 months before her application was filed." *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017).  "[T]he onset date is the date when the claimant is unable to engage in any substantial gainful activity due to physical or mental impairments that can be expected to last for at least 12 months." *Id*.  The ALJ is responsible for reviewing the record and resolving any conflicts or ambiguities. *Id*.

"[T]o obtain disability benefits, [a claimant] must demonstrate he was disabled prior to his last insured date." *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991). The claimant "bears the burden of proof and must prove that he was 'either permanently disabled or subject to a condition which became so severe as to disable [him] prior to the date upon which [his] disability insured status expired.'" *Armstrong v. Commissioner of the SSA*, 160 F.3d 587, 589 (9th Cir. 1998) (citation omitted).  "To be eligible for SSDI, a claimant's disability must 'be continuously disabling from the time of onset during insured status to the time of application for benefits.'" *Wellington*, 878 F.3d at 875 (citation omitted).

Plaintiff argues that the ALJ erred in failing to call a medical expert to aid in the determination of the onset date.  "Under ordinary circumstances, an ALJ is equipped to determine a claimant's disability onset date without calling on a medical advisor." *Id.* at 874 (finding medical expert not required when relatively complete medical chronology is available).  The medical evidence serves as the primary element in the determination of the onset date. *Id.* at 872 (citing Social Security Ruling 83-20).  "The ALJ must develop an incomplete record by calling on a medical advisor when 'medical evidence from the relevant time period is unavailable or inadequate.' This requirement most readily applies

1    when an incomplete record clearly could support an inference that a claimant's disability
2    began when there were no contemporaneous medical records." *Id.* at 873 (quoting
3    *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017)).  "[T]he ALJ should also enlist a
4    medical expert's help when 'the evidence is ambiguous regarding the possibility that the
5    onset of her disability occurred' at that time." *Id*. at 874.  "In those circumstances, 'an
6    ALJ's assessment of the disability onset date would be mere speculation without the aid
7    of a medical expert.'"  *Id.* (citation omitted).

8         Plaintiff argues that, pursuant to Social Security Ruling 83-20, the ALJ created
9    ambiguities in the medical record that required a medical expert when he proposed an
10   amended onset date of April 2017.  The hearing record does not support Plaintiff's
11   interpretation.  At the hearing, the ALJ noted that Plaintiff's left wrist fracture that
12   occurred in April 2017 "seems to be the most troubling thing that she suffers from, as far
13   as impeding her ability to work."  AR 56.  Following this statement by the ALJ, Plaintiff's
14   counsel alone raised the topic of amending the onset date to April 2017.  *Id.*  The ALJ
15   permitted Plaintiff and her counsel to discuss amending the onset date, but Plaintiff
16   ultimately declined to do so in order to preserve the issue on appeal.  AR 58.  The ALJ
17   did not implicitly agree that Plaintiff's left wrist fracture was so severe as to constitute a
18   disability.  Plaintiff's counsel, not the ALJ, mentioned issuing a partially favorable
19   decision with an onset date of April 2017.  AR 58.

20        Therefore, the ALJ did not introduce any ambiguity into the record when Plaintiff
21   raised amending the onset date and, for that reason, the duty to further develop the
22   record under SSR 83-20 was not triggered.  Indeed, the administrative record contains
23   Plaintiff's treatment history during the period from 2014 to 2017, supporting the onset
24   date of March 11, 2015.  Accordingly, Plaintiff has not shown error.

25

26

27

28

1

### D. **Treating Physicians**

2      Plaintiff argues that the ALJ improperly discounted the opinions of Plaintiff's

3   treating physicians and improperly relied on the opinions of the examining and state

4   agency reviewing physicians in formulating the RFC.[4]

5      The ALJ gave partial weight to treating physician Dr. Sobol.  AR 23.  The ALJ

6   found that the RFC "aligns with most of Dr. Sobol's opinions" but determined that the

7   "objective medical findings in the record do not support additional manipulative

8   restrictions" that Dr. Sobol assessed regarding Plaintiff's left shoulder.  AR 24.  The ALJ

9   gave less weight to treating physician Dr. Ahmed because his opinion "does not provide

10   a function-by-function assessment of [Plaintiff's] limitations" and it was rendered prior to

11   the alleged onset date.  *Id.*  As for the opinion of the orthopedic consultative examiner,

12   Dr. Hoang, the ALJ assigned partial weight because he found Plaintiff required a more

13   restrictive RFC.  AR 23.  Finally, the ALJ relied on the state agency physician's opinion

14   only to the extent that it found Plaintiff did not have a severe mental impairment.  AR 21.

15      An opinion of a treating physician is given more weight than the opinion of

16   non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an

17   uncontradicted opinion of a treating physician, an ALJ must state clear and convincing

18   reasons that are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d

19   1211, 1216 (9th Cir. 2005).  When a treating physician's opinion is contradicted by

20   another doctor, "the ALJ may not reject this opinion without providing specific and

21   legitimate reasons supported by substantial evidence in the record. This can be done by

22   setting out a detailed and thorough summary of the facts and conflicting clinical

23   evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d at 632

24   (citations and quotation marks omitted).

25

26   _____

27      [4] Plaintiff raised this issue in conjunction with an argument that the ALJ erred in
    formulating the RFC, which is discussed below.  For the sake of clarity, the court
28   discusses these arguments separately.

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Id.* When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation and emphasis omitted). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Dr. Ahmed

Plaintiff contends that the ALJ improperly rejected the opinion of treating physician Dr. Ahmed. This argument fails. Dr. Ahmed's failure to provide a function-by-function assessment of Plaintiff's limitations may not be a valid reason for discounting his opinion. *See Phillips v. Colvin*, 2014 WL 124634, at *4 (C.D. Cal. Mar. 24, 2014) (finding that lack of function-by-function limitations was "not a sufficient reason" for rejecting physician's opinion). The ALJ, however, reasonably relied on the fact that Dr. Ahmed's opinion was rendered in August 2014, approximately seven months prior to the alleged date of onset. *See Carmickle,* 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance."). Plaintiff's only argument to the contrary is that the opinions of Dr. Ahmed and Dr. Sobol should be considered together because Dr. Ahmed treated Plaintiff prior to Dr. Sobol, and both physicians treated Plaintiff as part of her Workers' Compensation claim. But Plaintiff

1    does not point to, nor could the court find, any case law that supports this argument.

2    Plaintiff has not shown error.

3          Dr. Sobol

4          Plaintiff contends that the ALJ failed to translate treating physician Dr. Sobol's

5    opinion, which was rendered as part of her Workers' Compensation claim, into Social

6    Security terms.  An ALJ is required to "translate" Workers' Compensation terms "into

7    the corresponding Social Security terminology in order to accurately assess the

8    implications of those opinions for the Social Security disability determination."  *Booth v.*

9    *Barnhart*, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. Jan. 22, 2002) (citation omitted).  The

10   ALJ's decision does not need to contain an "explicit 'translation,'" but should indicate

11   that the ALJ recognized the differences between the Workers' Compensation and

12   Social Security terminology and took those differences into account in evaluating the

13   medical evidence.  *Id*.

14         It does not appear that the ALJ translated or accounted for the Workers'

15   Compensation terminology in Dr. Sobol's opinion.  The ALJ does not acknowledge

16   anywhere in his decision that Dr. Sobol's opinion was rendered as part of Plaintiff's

17   Workers' Compensation claim.  The ALJ stated that Plaintiff's reduced sedentary RFC

18   aligned with "most of Dr. Sobol's opinions," but the ALJ did not explicitly adopt or reject

19   Dr. Sobol's assessments regarding Plaintiff's cervical spine and back, including

20   limitations to "very repetitive motions," "prolonged posturing of the head and neck," and

21   "repetitive bending and stooping."  AR 23-24.  These limitations are couched in

22   Workers' Compensation terminology, but there is no indication the ALJ considered that

23   fact prior to assessing Dr. Sobol's opinion.  *See Rocha v. Astrue*, 2012 WL 6062081, at

24   *2 (C.D. Cal. Dec. 3, 2012) ("If there are terms of art which are utilized in medical

25   evaluations, such as 'repetitive,' 'prolonged,' or similar terms, it is the job of the ALJ to

26   translate the meaning of such terms into the Social Security context.").  Moreover, the

27   RFC does not appear to incorporate Dr. Sobol's limitations related to prolonged

28   posturing of the head or neck, repetitive motions, or repetitive bending.  *See* AR 21-22.

Without any clear indication about whether or how the ALJ interpreted these limitations, the court cannot find that the ALJ properly assessed Dr. Sobol's Workers' Compensation opinion.

Furthermore, the ALJ's failure to evaluate the differences between the Workers' Compensation and Social Security terminology in regards to Dr. Sobol's cervical spine and back assessments was not harmless error. Notably, the VE testified that an individual precluded from prolonged posturing of the head and neck would not be able to perform Plaintiff's past relevant work as an administrative assistant. AR 57-58. In reaching this conclusion, the VE relied on Plaintiff's counsel's definition of "prolonged" as a maximum of two hours of a fixed neck position. *Id.* Defendant contends that the VE's testimony is irrelevant because Dr. Sobol did not define what he meant by "prolonged" and "posturing." The ALJ was required to evaluate Dr. Sobol's use of the term "prolonged posturing of the neck and head" in the context of Plaintiff's Social Security case. *See Rocha v. Astrue*, 2012 WL 6062081, at *2. Thus, the VE's testimony reflects that the ALJ's failure to translate these terms and consider them in assessing Plaintiff's RFC may have impacted Plaintiff's nondisability determination. *See Ismael A. v. Berryhill*, 2018 WL 6697178, at *3-4 (C.D. Cal. Dec. 19, 2018) (finding "ALJ's failure to either include, reject, or otherwise explain her interpretation" of physician's Workers' Compensation opinions in RFC assessment was not harmless error because VE's hypotheticals did not include limitations assessed by physician); *Gamache v. Colvin*, 2014 WL 5511210, at *1-2 (C.D. Cal. Oct. 31, 2014) (finding error when ALJ failed to properly translate and reject limitations in physician's opinion rendered for a Workers' Compensation claim). Therefore, the court cannot find that the ALJ provided specific and legitimate reasons for rejecting the cervical and back limitations assessed by Dr. Sobol.

Plaintiff also takes issue with the ALJ's rejection of Dr. Sobol's left upper extremity functional limitations. Regarding Plaintiff's left shoulder, Dr. Sobol precluded Plaintiff from "heavy lifting, as well as repetitive or forceful pushing or pulling, repetitive

forward reaching and over-the-shoulder work with the left upper extremity." AR 23, 395. The ALJ gave "less weight" to these limitations because he found they were not supported by "objective medical findings in the record." AR 24. The ALJ failed to translate the Workers' Compensation terminology in Dr. Sobol's opinion, but this error was harmless because the ALJ's rejection of the left upper extremity functional limitations was supported by substantial evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (noting error is harmless when it is "inconsequential to the ultimate nondisability determination") (citations omitted); *see also Dimola v. Berryhill*, 2018 WL 2278260, at *3-4 (C.D. Cal. May 17, 2018) (finding harmless error when ALJ failed to translate Workers' Compensation terminology in opinion by Dr. Sobol because there were inconsistencies regarding claimant's functional limitations).

The ALJ pointed to objective medical evidence in the record that did not support Dr. Sobol's finding of left upper extremity functional limitations. *See Lewis v. Apfel*, 236 F.3d 503, 513 (finding ALJ is not required to evaluate evidence under any specific heading in decision). Specifically, the ALJ referenced X-rays performed on Plaintiff's left shoulder in June 2017 that reflected normal findings.[5] AR 19, 3994. The ALJ also pointed to the opinion by Dr. Hoang, the orthopedic consultative examiner, who found tenderness in Plaintiff's left anterior shoulder joint but otherwise noted she had full range of motion, full joint stability, and negative impingement tests in her left shoulder. AR 19, 3127, 3130; *see also Andrews* 53 F.3d at 1041. The medical record supports these largely normal findings in the left shoulder. *See, e.g.*, AR 3407, 4037, 4054. Finally, Plaintiff does not point to any other evidence in the record indicating she required greater functional limitations in her left upper extremity. The ALJ provided specific and legitimate reasons for rejecting Dr. Sobol's left upper extremity limitations.

---

[5] Although Plaintiff fractured her left wrist after Dr. Sobol rendered his opinion, the ALJ also found that the record showed it was healing as expected and she only exhibited mild tenderness. AR 19-20.

Accordingly, the ALJ erred in failing to translate and account for the cervical spine and back limitations assessed by Dr. Sobol in his Workers' Compensation opinion.  This matter will be remanded on that basis.

### E.    Residual Functional Capacity

Plaintiff argues that the ALJ's RFC finding does not account for (a) her fibromyalgia, mental impairments, medication side effects, and obesity; and (b) her hip, tail bone, and upper and lower extremity impairments.

The RFC measures the claimant's capacity to engage in basic work activities. *Bowen v. New York*, 476 U.S. 467, 471 (1986).  The RFC is a determination of "the most [an individual] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a); *Treichler v. Comm'r*, 775 F.3d 1090, 1097 (9th Cir. 2014).  It is an administrative finding, not a medical opinion.  20 C.F.R. § 404.1527(e).  The ALJ's RFC assessment must be supported by substantial evidence.  *Bayliss*, 427 F.3d at 1217.

Beyond Plaintiff's subjective allegations, which are addressed below, Plaintiff does not point to anything in the record that indicates she required greater functional limitations than those found by the ALJ.  First, Plaintiff contends the ALJ did not explain how he accounted for the chronic diffuse pain and fatigue caused by her fibromyalgia in the RFC.  The ALJ found Plaintiff's fibromyalgia to be severe, and he stated that he accounted for it through her sedentary RFC.  AR 23.  There is nothing in the medical record or opinions indicating Plaintiff required greater limitations due to her fibromyalgia.

Similarly, Plaintiff takes issue with the ALJ's consideration of her hip, tail bone, and upper and lower extremity impairments.  In determining that these issues were not severe, the ALJ reviewed the medical record and noted largely normal findings.  AR 19-20.  With the exception of her left upper extremity, which is discussed above, there are no medical opinions indicating greater functional limitations for those impairments.

Further, Plaintiff testified that she experienced medication side effects.  Nothing in the medical record indicates she experienced side effects for medications she took

1  continuously.  *See Bayliss*, 427 F.3d at 1217 (finding ALJ's failure to expressly address

2  medication side effects is not error where there was no record support for side effects).

3    As for her mental impairment, the ALJ found it was non-severe because she did

4  not exhibit "any significant limitations in mental functioning" due to her anxiety and

5  depression.  AR 20.  This finding is supported by the medical record.  *See* AR 3491,

6  3665.  Plaintiff contends that the report by the psychiatric consultative examiner Dr.

7  Bagner, to which the ALJ gave great weight, is too limited to provide an accurate

8  representation of her mental condition.  The ALJ acknowledged that Dr. Bagner's

9  opinion was based on a "one-time examination," but found that Dr. Bagner's opinion

10  contained "detailed clinical findings and narratives explaining and supporting the

11  examiner's medical opinion and functional assessment."  AR 20.  The ALJ reasonably

12  relied on Dr. Bagner's opinion in finding Plaintiff had no functional limitations stemming

13  from her anxiety and depression.  *See Orn*, 495 F.3d at 632.

14    Finally, the ALJ found Plaintiff's obesity to be a severe impairment and stated that

15  he considered "the impact [of her weight] on her ability to ambulate as well as her other

16  body systems" and found it to be "within the limitations of [Plaintiff's RFC]."  AR 23.

17  Again, Plaintiff does not point to anything in the record that reflects the need for greater

18  functional limitations for her obesity.

19    In sum, Plaintiff takes issue with the ALJ's interpretation of the medical record in

20  formulating the RFC, but disagreement with the ALJ's interpretation of the medical

21  record does not warrant reversal of the ALJ's decision.  *See Burch v. Barnhart*, 400

22  F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational

23  interpretation, it is the ALJ's conclusion that must be upheld.").

24    As discussed in the preceding section, this matter is being remanded for

25  reconsideration of Dr. Sobol's cervical and back limitations.  On remand, the ALJ is free

26  to reconsider Plaintiff's RFC on that basis.

27

28

### F.     Subjective Allegations

In assessing a claimant's subjective allegations, the Commissioner conducts a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ determines whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 19.

Second, when as here the record does not contain evidence of malingering, the ALJ must give specific, clear and convincing reasons for discounting the claimant's subjective allegations. *Vasquez*, 572 F.3d at 591.

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were inconsistent with the objective medical evidence and other evidence in the record, specifically evidence that Plaintiff's treatment was conservative. AR 22-23. The ALJ may rely on lack of objective medical evidence to support the severity of Plaintiff's subjective allegations as one factor in the analysis, although it may not rely exclusively on that factor to discount Plaintiff's subjective allegations. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may also rely on the fact that Plaintiff received conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (finding that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

The ALJ's finding that Plaintiff received conservative treatment is not supported by substantial evidence. The ALJ found that Plaintiff received "relatively mild and conservative treatment" for her back and neck impairments. AR 22. Specifically, the ALJ stated that Plaintiff was "mostly given pain medication," but "[n]o other more invasive or drastic treatment plan was recommended, such as surgery" and the frequency and duration of her epidural injections and physical therapy were "unclear." *Id*. As for her fibromyalgia, the ALJ found that Plaintiff was "only given the pain

1  medication, Naproxen, and told to perform range of motion exercises," and the record

2  "does not indicate frequent [trigger point] injections."  AR 23.

3       The medical record supports the ALJ's finding that surgery was not recommended

4  for Plaintiff's back and neck impairments.  Although Plaintiff stated that her treatment

5  included recommended surgery, the record reflects only that a physician recommended

6  surgery to her knee – for an impairment that the ALJ found to be non-severe – as one of

7  multiple treatment options.  AR 19, 4068.  There does not appear to be any other

8  recommendation of surgery for Plaintiff's impairments.

9       The ALJ's remaining reasons for finding Plaintiff's treatment conservative fail.  The

10  medical record indicates that Plaintiff received trigger point injections and steroid

11  injections to her bilateral rhomboids and lumbar paraspinal muscles on at least three

12  occasions between May 2016 and December 2017, although it appears Plaintiff received

13  additional injections prior to May 2016.  AR 3284-86, 4009, 4306-10.  Plaintiff was also

14  prescribed pain medication, including Naproxen and Hydrocodone-Acetaminophen

15  (Norco), a narcotic.  AR 381, 3328, 3552, 4071.  Plaintiff received physical therapy and

16  management by a pain specialist.  AR 381, 387, 451, 3284, 4306.  Taken together, the

17  court cannot conclude that repeated trigger point and steroid injections, in combination

18  with prescription pain medication, physical therapy, and treatment by a pain specialist,

19  are conservative treatment.  *See Christie v. Astrue*, 2011 WL 4368189, at \*4 (C.D. Cal.

20  Sept. 16, 2011) (refusing to characterize treatment with narcotics, steroid injections,

21  trigger point injections, and epidural injections as conservative); *Eldridge v. Berryhill*,

22  2018 WL 2357147, at \*9 (S.D. Cal. May 23, 2018) (noting pain medication combined

23  with pain specialist referral and epidural steroid injections was "far from conservative");

24  *Cf. Gonzales v. Colvin*, 2015 WL 685347, at \*11 (C.D. Cal. Feb. 18, 2015) (finding

25  treatment consisting of medication and single steroid injection was conservative).

26       Because the ALJ's finding that Plaintiff received conservative treatment is not

27  supported by substantial evidence, the ALJ's only remaining reason for discounting

28  Plaintiff's subjective allegations is that they were inconsistent with the objective medical

evidence. The objective evidence, even if inconsistent with Plaintiff's subjective allegations, cannot alone constitute a reason to reject Plaintiff's subjective allegations. *See Rollins*, 261 F.3d at 857.

Accordingly, Plaintiff has shown error, and this matter must be remanded for reconsideration of Plaintiff's testimony.

### G. Past Relevant Work

At step four of the sequential analysis, the claimant has the burden of showing that he or she can no longer perform past relevant work. "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). "The claimant must be able to perform: 1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id*. at 845 (quoting Social Security Ruling 82-61); *see* 20 C.F.R. § 416.920(f) (stating that "we will compare our residual functional capacity assessment . . . with the physical and mental demands of your past relevant work").

Plaintiff argues that the ALJ erred by relying on the VE's testimony in finding that Plaintiff could perform her past relevant work as an administrative assistant. Specifically, Plaintiff contends that the ALJ posed an incomplete RFC hypothetical to the VE because it did not include of all Plaintiff's functional limitations, particularly limitations related to her left upper extremity and neck. Because the court is remanding this case to assess Dr. Sobol's cervical spine and back limitations and Plaintiff's subjective allegations, the ALJ may modify the RFC on remand and may reconsider whether Plaintiff can perform her past relevant work.

# IV.

# **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and this matter is remanded for reconsideration of Dr. Sobol's opinion and Plaintiff's subjective allegations, consistent with this opinion.

DATED: October 27, 2020

_____
ALICIA G. ROSENBERG
United States Magistrate Judge